The final case on for argument today is Charlery v. City of New York, Department of Education. May it please the court, good morning. Sarah Gruber on behalf of the appellant, Jacqueline Charlery, making a presentation with the permission of appointed pro bono counsel, Pro Loy Das. In this case, the plaintiff appellant had two separate lawsuits against the same defendant. She settled her earlier filed personal injury suit without any discussion at all about the discrimination suit that was then pending. Seven months later, the city comes back in the discrimination suit, and this is after the personal injury suit has been dismissed and stipulated dismissed. They come back seven months later with a boilerplate release and say, no, this one too was also dismissed. The issue here is about the plaintiff appellant's knowledge, both parties' intent, and whether this court's precedent in Borman applies to safeguard Ms. Charlery's rights to pursue her federal remedial rights under the Americans with Disabilities Act. Is she prepared to give the $30,000 back? I would imagine so. Or, at the very least, the city here didn't move to enforce the settlement agreement. And, in fact, the city's position in litigation and their litigation conduct in both cases suggests that even the city didn't intend to settle the discrimination suit. In fact, what happened was the notice of removal, the city filed this notice of removal prior to the pretrial settlement here in which they settled the PI suit. But isn't the purpose of getting general releases precisely to avoid this kind of back and forth? She was a professional. She was completely fluent in the English language. She was represented by two counsel. And she signed the document. The document could not be plainer. Well, Your Honor, I would disagree that the document is plain. I agree. And this all very well speaks to the Borman's balancing test. And it's a totality test. Your client does hereby release from any and all, the city, from any and all claims. We know all is one of the most capacious words in the English language. It covers a lot of territory. Then it goes on to suits, causes of action, which she had, now has, or might have. Why is it that the contract's 101? She signed it. Counseled. She's got substantial consideration. She's not infirm in any way. She just had remorse after she did it. Well, Your Honor, this isn't just a straight contract case because her federal remedial rights are in play and Borman is in play. That requires a knowing and voluntary waiver, not just a literal waiver. And we don't even concede that the waiver itself is as clear as the court suggests. All right. So is there a, in Vermont, there's some case law to that effect when there's other things going on. It has to be a carve out or it has to be an explicit reference. But is there anything comparable to that under New York law? Well, so Your Honor, I guess I would say that this case should be governed by federal law, at least to the extent that there's... Well, no, because what we've got is an agreement under New York law that's been in, that we've got to look at under New York law to determine the extent of that agreement. Yes, Your Honor. There's no, that I know of, there's no law that says that it has to reference the anti-discrimination statutes in order for it to be waived. However, New York law does require in Mangini v. McClurg, which this court cited in Golden Pack, that the intent of the parties has to actually mean what it says in the general release. And in fact, the court of appeals' statement is general releases are almost never... We get lots and lots of contracts through this court. And if we had a principle that parties aren't bound by what they sign, but by what they meant, we would never go home. Well, Your Honor, I would disagree though, because general releases are effective. That would create, the financial district is right out there, that would create unbelievable havoc. Your Honor, I would disagree. To the extent that a general release would never be applicable or effective, I don't believe is the case here, particularly because it's a personal injury release. And the release says, I'm going to waive Medicare rights, and the court can take judicial notice of the city's other releases and other cases. This was a personal injury release, and both parties' conduct before and after suggests that nobody intended to settle the personal injury action. So every case in New York gets settled by executing a Blumberg-form general release. And everybody knows what they mean, because they're written in English. Yes, Your Honor. Just like this one. I thought that your argument, or an argument, but the central argument, was that when we are dealing with discrimination claims, that this society and our courts have highly valued, we don't want to cut them off prematurely. We have got to be very careful about ensuring that the waiver of a claim of discrimination, gender discrimination, disability discrimination, race discrimination, is knowing and voluntary. And that's why we set out the Borman factors. Exactly, Your Honor. That is your argument. Yes, Your Honor. It's one of them. And to be fair, the Second Circuit has not explicitly said that the knowing and voluntary test adopted in Borman applies to ADA and Rehabilitation Act claims. But it's a logical extension. The same category as gender. Exactly. Exactly. And so, to Your Honor's point, yes, the language of the release certainly plays a part. But it's only one part. And on a motion for summary judgment. Does the language of the release cover this claim? No, Your Honor. It's ambiguous, or at the very least, New York law scrutinizes it. Did you raise any argument about the scope of the general release in the district court? Yes, Your Honor. Where did that happen? So, it was raised by raising the issue of fact about what was intended. That it was never discussed. Did you raise the argument that this was outside the scope of the general release? Yes, Your Honor. To that extent, it marries up with the knowing and voluntary test. Where did you do that? Well, it was in the motion to the extent that it says, I never intended to. Nobody discussed it. And it doesn't cover. You view that as raising a question or challenging the scope of the general release. Yes, Your Honor. And even had it not been explicitly raised, the court can consider it anyway. Because it's part and parcel of the knowing and voluntary inquiry. If we find that the release is not ambiguous. Let's set aside the Borman factors for a second. Do we then have to still consider any extrinsic evidence? Which is the evidence I think you ask us to consider? Yes, Your Honor. Because of Mangini v. McClurg, the party's intent is subordinated into the terms of the agreement. Even on a general release. And because it's a general release. And in fact, the court in Interpool, which construed Mangini v. McClurg, held that it didn't speak to ambiguity at all. However, we do believe that there is an ambiguity. But even then, general releases are disfavored. Or at the very least, the party's intent can inform what the release means and what it says. Explain to me how this release language does not cover your client's claim. Well, Your Honor, it's a pre-printed form. It's got this matter. Nothing to do with it. That's irrelevant. What's next? It then goes on. If it says, it releases every and all claim. And then in the next paragraph, it says, in further consideration for the payment set forth above, waives releases, forevers discharges, anything arising out of Medicare eligibility, and for receipt of Medicare benefits related to the claimed injury in this matter. That language suggests that the prior language doesn't mean what it says. That's a clear ambiguity here. This release reached Mrs. Cholere from her lawyer, right? I believe this occurred during a pretrial in one day in the personal injury action where she was represented by separate counsel than the counsel she had in the discrimination suit. And the testimony below, the uncontroverted testimony below, was that it was handed to her that day, that there was no advice that she was given on it, that the consideration included only the personal injury action. We have a malpractice claim against the lawyer. It sounds like a remedy may be looking to the right or left. Well, Your Honor, the malpractice is not a proper remedy, particularly because Borman safeguards this and doesn't require malpractice as a remedy. She was counseled by a lawyer. A lawyer's job is to, if you have any questions about it, you ask your lawyer. If you didn't have time, you tell your lawyer you don't have time. If you can't read it, you ask your lawyer to explain it to you. Well, the other Borman factors are there too. You know, we're not babysitting here. We're enforcing contract rights. Well, Your Honor, had the city even intended for this waiver to apply, why didn't they move to enforce it once the discrimination suit wasn't dismissed? It's the conduct by both parties that suggests that this was never an intended consequence, and Borman requires that it has to be a knowing consequence of her signing it because the contract itself . . . What wasn't intended? Any settlement of the discrimination suit at all. There was no consideration for it. It wasn't clear. She was given . . . Why isn't it near irrebuttable presumption that someone intended what they said they intended when they signed their name to a document? Well, Your Honor, speaking to a presumption, I don't agree with the district court's conclusion about there being a presumption that if a plaintiff is counseled, then the release stands in every consequence. And, in fact, the circuits that have adopted presumptions relating to representation by counsel would allow it to be rebutted. And it would have been rebutted here, particularly given the uncontroverted testimony, which the court must accept as true in a motion for summary judgment, that she wasn't counseled. And, in fact, the court . . . I'm sorry. She was not counseled. Thank you. It was not counseled. And this court essentially adopted that position in an EEOC v. Amex. That was adopted by Coventry and then by extension in Borman, which says you can get advice from a lawyer. It doesn't mean you understand. And all the other factors do need to be considered when you are signing a release, but even when you have a lawyer. Because what's king here is safeguarding remedial rights that Congress has said is important and must be rigorously scrutinized before you can waive them. Thank you. Ms. Grover, you've reserved two minutes for rebuttal. Yes. Thank you, Your Honor. Ms. Wang, good morning. Good morning, Your Honors. And may it please the Court, my name is Chan Julie Wang, and I'm appearing on behalf of Appley in this case. Your Honors, the very cases that my colleague relies on, Mangini and Interpool, they expressly state that where, circumstantially, the parties clearly intend for the general release to be a general release, the general release applies. Now here, the district court's sound decision is firmly rooted in several. But they also say that the language of a general release is not dispositive under certain circumstances. That's correct. And will instead give way to the party's actual intent. Right. And that's looking to, again, it goes to the totality of the circumstances. So here, those circumstances are shown by four undisputed facts. First, Ms. Sharley has never contended that any counsel in this suit and the other suit has been incompetent or inadequate. Secondly, she filed this suit in September. She entered . . . But she's saying that she didn't have counsel. She was represented by counsel. That's undisputed, that she was represented by competent counsel in both suits. Secondly, she filed the suit in September, signed that general release in October, and filed an amended complaint in the suit in November that expressly referenced the personal injury suit that she had just signed a general release in. So clearly, these circumstances are very different even from the contracts of adhesion and the other employment cases that we're looking at, even in those cases where releases have been held to be valid. Here, she clearly had this suit in mind when she signed that very clear and generally worded contract. Right, but she then went forward in this suit, the one in front of us . . . Yes. . . . and referenced the settlement. So, is that right? I don't think she referenced the settlement. She referenced the suit. Right, yes. The injury suit. Yes, and that's because at the time she signed the release, which was in October, the stipulation of dismissal did not enter until December . . . late December, December 30, 2015. So, it was not yet officially settled at that time. And, you know, the . . . And the fourth fact is that Ms. Charlerie has a college education. She's been a teacher for decades. She clearly is an intelligent woman who can read the basic language of the contract. And on appeal, Ms. Charlerie does not dispute these facts, nor does she present a genuine dispute of material fact. If it is sufficient to present a genuine dispute on the face of an affidavit saying, I didn't understand this plain contract, even though I was advised by competent counsel in both suits, then that would wreak havoc not just in enforcing settlement releases, but also in contract cases in a myriad of subject matter areas. Rather, her appeal relies on numerous misunderstandings. First is that she appears to believe that the court is required to draw all inferences in her favor, and the law instead is that the court is required to draw all reasonable inferences in her favor. The district court was not required to disregard common sense, not required to ignore the plain facts in the situation surrounding her decision to enter this release, nor was it required to ignore the very plain language that the face of this contract shows. Further, on appeal, Charlerie continues to rely on many ADEA cases, which are very different from this context. And again, I will note, as I alluded to earlier, that many of the employment cases that we're looking at is a situation where the employer presents a contract at hiring or at termination, telling the employee to sign a form release. Here, Ms. Charlerie had far more bargaining power. She was in active litigation against the city. But you know what? The policies that I alluded to that relate to being very careful when we determine that a discrimination claim is the subject of a general release that doesn't specifically refer to the discrimination claim seem to adhere in any context. I mean, I don't know why you would want an exception, Ms. Wang. I don't dispute that. I'm merely saying I think it is important, and discrimination claims are very important. It's important to keep it to a higher threshold in terms of waiver. But my point was that even in Borman, the very case that Ms. Charlerie invokes here, the court found that summary judgment was appropriate based on that release. But Judge Atkins seems to have, I mean, I guess you're right that he went through the Borman factors to determine whether the waiver was made knowingly and voluntarily. He did, Your Honor, yes. I'm not sure that there's much more you can do besides that. And in Borman, this court said the lack of opportunity to negotiate on its own does not require a trial on voluntariness. We look to the general circumstances surrounding the entry of that contract. And that brings me to my final point, which is that this is a pragmatic question. What do the circumstances feel like? How does the scenario feel? And here, Ms. Charlerie's being represented by competent counsel, her bargaining power in two active litigations, the clarity of the language in Ms. Charlerie's education and training really shows that in this practical scenario, she understood. She entered this contract voluntarily and knowingly. And the broader implications of this case and cases to come is also a practical one. This court has repeatedly emphasized that parties need to rely on settlement agreements, need to believe that a closed matter remains so. What makes this, I mean, I just don't mean to repeat myself, what makes this a somewhat more difficult case is that it's a discrimination claim. But I take it that what the city's argument is is that in answer to Mangini, Borman is a way going through those factors to determine the intent of the parties. Yes. At least with respect to figuring out whether they voluntarily and knowingly intended to waive the discrimination claim. That is correct, Your Honor. Our distinction on ADA cases is simply that the Older Workers Benefit Protections Act has further requirements on waivers, such as 45 days' notice, additional things that have not been codified for ADA or Rehabilitation Act claims. That is the distinction. But we believe that under Borman and under de novo review here, this release remains valid. So if Your Honors have no further questions, we ask that you affirm the discourse. Well, not so fast. Oh. But thank you. Thank you. I expect and I'm sure Ms. Gruber will stand up and tell us or reiterate this for us, if not she may be prompted to. I mean that the argument under Borman is that this, it was not clear or not intended ever that this release cover these discrimination claims. So . . . So, I mean, and so we're back to determining whether Judge Etkin, the district court, got the Borman factors right. Yes. If we get to that point. But I think that's where we're headed. Sorry. Speaking for myself, that seems to be where I am headed. So tell me why Judge Etkin got those factors right and when you're doing that, and you'll have plenty of time, don't worry about it. Okay. When you're doing that, what standard do we apply to Judge Etkin's review of the Borman factors? Quick aside, I'm thinking about the way this circuit analyzes the Polaroid factors for copyright, for example. You know, this whole balancing act and there's some delicate balancing that gets done in that. So how do we analyze, how do we review a district court's application of the Borman factors if we get there? I think because it is a mixed question of fact and law, it would lean towards de novo because there are no . . . Well, the district court in this case made no actual direct findings because any facts that are here are undisputed based on this record. They're just plain subject to judicial notice. So going through those factors, the first is the plaintiff's education and business experience. Ms. Charlerie has a college education. She has been teaching for many decades. She clearly understands what it means to sign a release that says any and all claims that she now has or ever will have, known or unknown. The amount of time that she had possession to or access to the agreement, you know, she had . . . I believe she signed it in less than 24 hours, but there has been no representation that she was pressured to do that. There's been no representation that she didn't have an opportunity to talk to her competent counsel during that time. So, I'm not sure that that goes one way or the other. And again, I would note that this court has said that not all factors have to be satisfied. Not a single factor is dispositive. It is simply a general sense of the totality. The role of the plaintiff, the general release is something that the city offers. So, the plaintiff here, you know, did not write the terms of the agreement. But again, we would emphasize that she was actively litigating a case. So, this is different. She had more of a role than an employee signing on at hiring the second day of work, first day of work, given an agreement. She was actively litigating which case? At that time, she was actively litigating both cases. The clarity of the agreement, I think we can all agree that is very clear. Whether the plaintiff was represented by or consulted with an attorney, she was. That has not been disputed. Whether consideration was given in exchange for the waiver, she was giving $35,000. That seems to be a substantial sum. Moving on, whether the employer encouraged the employee to consult an attorney, whether she had a fair opportunity to do so, we would contend that the circumstances would show that she had a fair opportunity to do so. But, yeah. And so, on that weighing, Your Honor, we would ask that you affirm this report. And the ultimate question is whether a reasonable person, given all of those facts, would understand that she was giving up her federal discrimination claim. Is that your position? Yes, Your Honor. Great. Thank you. Thank you, Ms. Wong. Ms. Gruber. Thank you, Your Honor. Let me just begin by saying Ms. Charley is prepared to give the $35,000 back. And this case is not about whether the district judge got the factors right. It's about whether he applied the factors on a motion for summary judgment on this record. This record. What evidence in the record before Judge Atkin was that the release didn't cover this claim simply because she didn't intend it to? Well, Your Honor, there's two reasons why the release doesn't cover the claim. The first is that it's ambiguous, and that's a question of law for the court. The second is, under New York law, the intent of the parties is king, and intent is a question of fact. Now, a question of fact here, and what I didn't hear the city say, was that it intended to settle the discrimination suit. It waited seven months to even amend its answer to include this as an affirmative defense. And it waited even longer. It didn't present evidence of its own to say, yes, we intended it, and we were there. Judge Gruber, in the thousands and thousands and thousands of contract claims we hear in this court and across the street, what the parties intend is reflected in what they sign. And if we are to unbutton that, we have a gigantic mess on our faces and on our hands. In addition, I mean, your client is an experienced, seasoned member of a learned profession. The notion that she can't understand what any means or all means is a stretch for me. Well, Your Honor, I would say that this court in Borman said contract law would play too salient a role if we could allow everyone to waive their claims without knowing they're doing so, and only for, and specifically for, these types of discrimination claims. Is your view that the knowing and voluntary requirement here in this type of case, is that a subjective requirement or is that an objective requirement? That is, is it a reasonable person requirement or is it did she intend X, Y, or Z? Well, Your Honor, I think that the Borman factors give a number of factors that are objective evidence that get at the subjective issue. And that's why, on this record, there should have been testimony. But the only testimony there was speaks to both. The declaration on page 7 of the brief says, At no time did I think by signing this release I was also releasing the defendant from this discrimination lawsuit. The general release does not require the discrimination suit to be dismissed. The release appears to be a form pertaining to my personal injury lawsuit. There was no extra consideration given in exchange for release. And I'll take note that in the notice of- But you don't actually rely just on that, right? No. So there's an objective element. Exactly. Yes, Your Honor. And the multi-factor test suggests that almost all of the factors, the objective factors, go in Ms. Charlerie's favor. And I have to say that there's no evidence in the record at all about what she was advised by either lawyer. And, in fact, the only evidence in the record suggests that she was not. And so even in the cases where there is advice of counsel, there could be a presumption that maybe she's given that advice. But she's rebutted it here. Well, nobody could know that but her. And she submitted an affidavit to that point. And, in fact, the district- You know, the advice the attorney gave her was privileged, right? At this point, this is an at-issue matter. And in all of the cases in which summary judgment is adjudicated on this point, you get testimony and affidavits or live testimony from lawyers who are in the room saying, yes, we negotiated exactly this suit. We negotiated the personal injury suit and both. But here, what we have here is the plaintiff issuing a demand for $900,000 and then a month later settling for $35,000 in what appears to be and only states that it is applied to the personal injury suit alone. And in this case, she didn't waive her claims. Borman didn't allow her to. But she didn't anyway. And so she needs to be allowed to either hear her claims on the merits or at least the judge needs to make a credibility determination based on all the factors, subjective and objective, about what happened that day. But all of the evidence in the record suggests subjectively to both parties that there was no intention for this release to cover the claims here. Just remind me, please, the timing then between the execution of the general release and presumably, I would hope, almost simultaneous issuance of the $35,000 check and when it got raised in this case, that release got raised in this case as a defense. Sure, Your Honor. I don't know when the check was actually issued and there's no evidence. Forget that part. Execution of the release and? Sure. There was obviously the pending personal injury suit. In September of 2015, the discrimination suit was filed in state court. The defendant removed. Then they had the personal injury settlement conference. And thereafter, so that was in October, so we have a month between notice of removal and the actual settlement conference. A couple days later, plaintiff in the discrimination suit amends her complaint. The city does nothing. Then she settles and dismisses her personal injury action. She's represented by counsel in all of this. Separate counsel in each case. Okay. And just to Your Honor's point, so we have a month between filing of the complaint, the discrimination complaint, and settlement of the PI complaint. Then the city waits seven months, files an answer, does not assert waiver or release. Seven months later, files an answer with release for the first time. And decides to take discovery on that point. But after all this discovery, they have only the release to show. That's it. And in fact. The light bulb went off and they saw the general release. And it's the same defendant in each case. You'd think that they would have moved to enforce the settlement agreement had it intended to settle both cases. Our job here is really not to correct the papers of the law department. I mean, you know, six, 700 lawyers there and a big, big tier of responsibilities. They may not operate with the efficiency of your firm. Thank you for the chronology. They do the best. And thank you both for your arguments. Thank you, Your Honor. I appreciate it. And particularly to you, Ms. Brewer. I know you and your colleague are doing this pro bono. So please don't take our sharp questions or my sharp questions as indicating any lack of gratitude for what you've done. And once you're leaving this courthouse, believe me, that no good deed goes unpunished. Thank you. Thank you all. Last, the clerk, please, to adjourn court. Everyone have a good weekend. Tomorrow's cases are on.